# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

C & J GLOBAL INVESTMENTS, INC.,

      Plaintiff,

v.                                      Case No.: 8:16-cv-1039-EAK-AEP

BRIAN KNIGHT, MICHAEL LOPRIENO, CAPGAIN PROPERTIES, INC., CAPGAIN HOLDINGS, INC., COMPUTERSHARE INVESTOR SERVICES, INC., and JVS CONTRACTING, INC.

      Defendants.

---

## ORDER

Before the Court is Plaintiff C & J Global Investment, Inc.'s Motion to Strike Affirmative Defenses and Dismiss Counterclaims Filed by Defendants Brian Knight, Michael Loprieno, and CapGain Properties, Inc. ("Motion") (Doc. 179). Defendants filed a joint response in opposition to the Motion ("Response") (Doc. 187). Plaintiff's Motion is **GRANTED IN PART AND DENIED IN PART**.

## I.   Background

Plaintiff commenced this case by filing a civil complaint against Brian Knight, Michael Loprieno, CapGain Properties, Inc. ("CGP"), CapGain Holdings, Inc., and Computershare Investor Services, Inc. on April 28, 2016. *See generally* (Doc. 1). On May 11, 2017, the Court ordered that Plaintiff add Defendant JVS Contracting, Inc. ("JVS") as an indispensable party. *See* (Doc. 117 at 4–6). Plaintiff then filed its operative, Third Amended Complaint ("Complaint") (Doc. 118) on May 25, 2017. Through its Complaint, Plaintiff brings claims for declaratory relief, federal securities fraud, and

recession of its sale of real property located in Polk County, Florida. *See generally* Complaint.

Defendants Knight, Loprieno, and CGP filed their Joint Verified First Amended Answer, Affirmative Defenses, and Counterclaims to Plaintiff's Complaint ("Answer") (Doc. 163) on October 16, 2017.[1]  Through their Answer, Defendants generally deny Plaintiff's allegations, assert nine separate affirmative defenses to liability, and counterclaim against Plaintiff for breach of contract. *See generally* Answer.

Plaintiff filed the instant Motion on November 6, 2017.  Through its Motion, Plaintiff, contends that Defendants' first (laches), second (unclean hands), fourth (*res judicata*), sixth (release), eighth (exemption as it pertains to the registration of securities), and ninth (exemption as it pertains to the selling of securities) affirmative defenses should be stricken from their Answer. *See* Motion at 1–8.  Plaintiff further contends that Defendants' two counterclaims for breach of contract should be dismissed for lack of subject-matter jurisdiction, failure to state a claim for which relief can be granted, and failure to join indispensable parties under Rule 19. *Id.* at 8–16.  Defendants, of course, disagree and counter that Plaintiff's Motion fails to raise any legal deficiencies in their affirmative defenses or counterclaims. *See generally* Response.  Plaintiff's Motion is thus ripe for decision.

---

[1]      Defendant Computershare Investor Services, Inc. failed to answer or otherwise respond to Plaintiff's Complaint, and the Clerk accordingly entered default on December 16, 2016 (Doc. 80). Defendant JVS filed its Answer and Affirmative Defenses to Plaintiff's Complaint on September 12, 2017 (Doc. 151).  Defendant CapGain Holdings, Inc. failed to answer or otherwise respond to Plaintiff's Complaint, and is not currently represented by counsel.  By Order of United States Magistrate Judge Anthony E. Porcelli (Doc. 189), CapGain Holdings, Inc. was to retain counsel on or before January 22, 2018.  However, to date, no notice of appearance of counsel has been filed on behalf of CapGain Holdings, Inc.

Case No.:  8:16-cv-1039-EAK-AEP

## II.  Discussion

### A. Defendants' Affirmative Defenses

#### 1. Legal Standard

"An affirmative defense is generally a defense that, if established, requires judgment for the defendant even if the plaintiff can prove his case by a preponderance of the evidence." *Wright v. Southland Corp.*, 187 F.3d 1287, 1303 (11th Cir. 1999).  Rule 8 governs Affirmative Defenses, stating that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c).  A defense is sufficiently pleaded under Rule 8 if it is stated in "short and plain terms." Fed. R. Civ. P. 8(b)(1)(A).  Rule 12 permits the Court to strike from a pleading, *inter alia*, an "insufficient defense." Fed. R. Civ. P. 12(f) (emphasis added).  However, "[a] motion to strike is a drastic remedy generally disfavored by the courts, and will ordinarily be denied unless the material sought to be stricken is insufficient as a matter of law." *Arthurs v. Glob. TPA LLC*, No. 6:14-cv-1209-PBG-TBS, 2015 WL 13652716, at *1 (M.D. Fla. Feb. 6, 2015) (unpublished).  "For a court to find a defense insufficient as a matter of law, the defense must be (1) patently frivolous on the face of the pleadings, or (2) clearly invalid as a matter of law." *Wlodynski v. Ryland Homes of Fla. Realty Corp.*, No. 8:08-cv-361-T-JDW-MAP, 2008 WL 2783148, at *1 (M.D. Fla. July 17, 2008) (unpublished) (internal citations and quotations omitted).  "An affirmative defense should survive if it comports with Rule 8(c)'s purpose—'guarantee[ing] that the opposing party has notice of any additional issue that may be raised at trial.'" *Hernandez–Hernandez v. Hendrix Produce, Inc.*, No. 6:13-cv-53, 2014 WL 726426, at *3 (S.D. Ga. Feb. 24, 2014) (unpublished) (alteration in original) (quoting *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988)).

Case No.:  8:16-cv-1039-EAK-AEP

### 2. Application

As noted above, Plaintiff contends that Defendants' affirmative defenses of laches, unclean hands, *res judicata*, release, and exemption are insufficient as a matter of law and should be stricken. *See* Motion at 2–8. The Court will address each in turn below.

#### i. Laches

To establish the affirmative defense of laches, a defendant "must demonstrate (1) there was a delay in asserting a right or a claim, (2) the delay was not excusable, and (3) the delay caused [the defendant] undue prejudice. *United States v. Barfield*, 396 F.3d 1144, 1150 (11th Cir. 2005) (citing *AmBrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1545 (11th Cir. 1986)). Where there is an applicable statute of limitations, however, the defense of laches does not apply.[2] *See United States v. Mack,* 295 U.S. 480, 489 (1935) (holding that "[l]aches within the term of the statute of limitations is no defense at law") (internal citation omitted); *Holmberg v. Armbrecht,* 327 U.S. 392, 395 (1946) (stating that "[t]he Congressional statute of limitation is definitive"); *Groves v. Patricia J. Dury, M.D., P.A.*, No. 2:06-cv-338-MMH-SPC, 2006 WL 2556944, at *2 (M.D. Fla. Sept. 1, 2006) (unpublished) (stating that "[t]he doctrine of laches does not apply to congressional acts providing a statute of limitations") (citing *Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1320 (S.D. Fla. 2005)).

Here, Plaintiff brings claims for securities fraud in violation of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j, and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, (Count III), the sale of securities by unregistered persons in violation of

---

[2]     Defendants have raised the applicable statutes of limitations as an affirmative defense to Plaintiff's claims. *See* Answer at ¶¶109–123.

Section 15 of the Securities Exchange Act, 15 U.S.C. § 78o, (Count IV), and the unregistered offer and sale of securities in violation of Section 5 of the Securities Act, 15 U.S.C. § 77e, (Count V).[3]  Each claim is subject to an applicable statute of limitations. *See* 28 U.S.C. § 1658(b) (setting the statute of limitations for claims alleging violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5 thereunder at the earlier of (1) two years after the discovery of the facts constituting the violation, or (2) five years after such violation); 15 U.S.C. § 78cc (setting the statute of limitations for claims alleging violations of Section 15 of the Securities Exchange Act, 15 U.S.C. § 78o, at one year after the discovery that such sale or purchase involves such violation or within three years after such violation); 15 U.S.C. § 77m (setting statute of limitations for claims alleging violation of Section 5 of the Security Act, 15 U.S.C. § 77e(a)(1), at one year after the violation upon which it is based or three years after the security was either sold or offered to the public). Consequently, because Congress has articulated a specific statute of limitations as to Plaintiff's claims, the Court finds that laches is not an available defense.  Accordingly, Defendants' laches defense is due to be stricken.

### ii.  Unclean Hands

"For a defendant to successfully avail itself of the doctrine of unclean hands, it must satisfy two requirements."  *Calloway v. Partners Nat. Health Plans*, 986 F.2d 446, 450– 51 (11th Cir. 1993).  "First, the defendant must demonstrate that the plaintiff's wrongdoing is directly related to the claim against which it is asserted."  *Id.* (citing *Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240, 245 (1933)).  "Second, even if directly related,

---

[3]     Plaintiff's claims in Counts I and II for declaratory relief pursuant to 28 U.S.C. § 2201 are predicated on the same conduct that Plaintiff avers substantiate its claims for violations of federal securities law, which are contained in Counts III–V.

the plaintiff's wrongdoing does not bar relief unless the defendant can show that it was personally injured by [the plaintiff's] conduct." *Id.* (citing *Mitchell Bros. Film Group v. Cinema Adult Theater,* 604 F.2d 852, 863 (5th Cir.1979),[4] *cert. denied,* 445 U.S. 917 (1980)).

Plaintiff contends that Defendants have failed to satisfy the first requirement. *See* Motion at 4. Whether or not Plaintiff is correct is inconsequential at this juncture, as the Court finds that Defendants have failed to duly satisfy the second requirement. To be sure, Defendants' unclean hands defense alleges no facts tending to show that they were injured as a result of any alleged misrepresentations made by Plaintiff in the Share Purchases Agreement. *See* Answer at ¶¶99–108. Accordingly, Defendants' unclean hands defense is due to be stricken. However, as this pleading defect may be curable, Defendants are granted leave to amend.

### iii.  Res Judicata

*Res judicata* bars the filing of claims that were raised or could have been raised in prior litigation. *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999) (citations omitted). "[A] claim is precluded by prior litigation if: (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (unpublished) (internal quotations and citations omitted).

---

[4]     In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Case No.:  8:16-cv-1039-EAK-AEP

In pleading their *res judicata* defense, Defendants contend that Plaintiff's claims in this case are nearly identical to Plaintiff's claims against the same Defendants in a lawsuit previously filed in a Florida state court.  *See* Answer at ¶¶124–129.  But Defendants concede that the order of that court granting summary judgment in their favor is non-final and appealable, and there has been no final judgment on the merits.  *Id.* at ¶129.  That being the case, Defendants couch their *res judicata* defense as a "reservation of rights." *Id.* at ¶¶124, 129.  However, "[a] reservation of rights to make future amendments to a filed pleading is not a proper affirmative defense or a general denial." *See In re Cooper*, No. 6:11-bk-5364-KSJ, 2013 WL 5278933, at \*2 (Bankr. M.D. Fla. Sept. 19, 2013) (unpublished) (citations omitted); *see also, e.g., Ayers v. Consol. Constr. Servs. of SW Florida,* No. 2:07-cv-123-JES-DNF, 2007 U.S. Dist. LEXIS 86596, at \*2 (M.D. Fla. Nov. 26, 2007) (unpublished) (striking a reservation of rights clause asserted as an affirmative defense).  Accordingly, Defendants' *res judicata* defense is due to be stricken.  That said, Rule 15 permits a party to amend its pleading with the opposing party's written consent or the Court's leave.  *See* Fed. R. Civ. P. 15(a)(2).  Should the circumstances be such that Defendants later wish to amend their Answer to add a *res judicata* defense, they are directed to either gain Plaintiff's consent to do so or file an appropriate motion with the Court.

### iv. Release

As an affirmative defense, release contemplates a contractual provision that affirmatively releases a party from liability for some or all of the claims asserted against them in a lawsuit.  *See Rakip v. Paradise Awnings Corp.*, 514 F. App'x 917, 920 (11th Cir. 2013) (unpublished).  "[P]rinciples of law applicable to contracts generally are also

applicable to releases." *Allgood Elec. Co. v. Martin K. Eby Constr. Co., Inc.*, 85 F.3d 1547, 1552 (11th Cir. 1996).

In pleading their release defense, Defendants contend that the Share Purchase Agreement contains a release provision that operates to bar any liability for Plaintiff's federal securities claims. *See* Answer at ¶¶140–142. Plaintiff moves to strike Defendants' release defense on two fronts: first, Plaintiff contends that the Share Purchase Agreement, which Defendants appended as an exhibit to their Answer, *see* (Doc. 163-2), "is not executed by any party other than [Plaintiff]," *see* Motion at 5; and second, Plaintiff contends that the Share Purchase Agreement "does not even purport to 'release' any of the claims filed in the [Complaint]," *id.*

As to the former contention, while Plaintiff is correct that the copy of the Share Purchase Agreement appended to Defendants' Answer is only signed by Plaintiff, acting through its President, George Holder, *see* (Doc. 163-2 at 36), Section 9.8 of the Share Purchase Agreement states that it "may be executed in one or more counterparts, each of which so executed shall constitute an original[.]" *Id.* at 34. Moreover, Defendants contend in their Response that the Share Purchase Agreement was, in fact, singed by all parties to it. *See* Response at 10. As to the latter contention, the dispute with regard to whether the language contained in the release, in fact, operates to absolve Defendants of any liability necessitates consideration of the Parties' respective intentions in addition to factual and other matters outside the pleadings, and, as a result, is premature at this stage of the case. Accordingly, as the Court finds it is otherwise well-pleaded, Defendants' release defense should survive Plaintiff's Motion.

### v.  Exemption

Like Defendants' release defense, the dispute with regard to whether (1) the securities at issue are exempt from registration under 17 C.F.R. 240.12g3-2(b) and (2) Knight and Loprieno are exempt from registration as brokers under 17 C.F.R. 240.3a4-1(a)(4)(C) (*i.e.*, Defendants' eighth and ninth affirmative defenses, *see* Answer at ¶¶146–166) necessitates consideration of factual and other matters outside the pleadings, and, as a result, is premature at this stage of the case.  Accordingly, as the Court finds they are otherwise well-pleaded, Defendants' exemption defenses should survive Plaintiff's Motion.

### B. Defendant's Counterclaims

Through their Answer, Defendants counterclaim against Plaintiff and its President, George Holder, for breach of contract.  In support, Defendants allege the following facts, which, for the purposes of ruling on Plaintiff's Motion, the Court accepts as true:

In October of 2011, Plaintiff, acting through Holder, entered into a "Commercial Sales Agreement" with Defendant CapGain Holdings, Inc. ("CGH") for the sale of the subject Polk County property.  *See* Answer at ¶174.  As consideration for the property, Plaintiff was to receive both cash and shares of CGH.  *Id.* at ¶175.  Initially, the sale was conditioned on CGH becoming publicly traded through an initial public offering on the Canadian National Stock Exchange.  *Id.* at ¶176.  That condition was later amended to CGH entering into a definitive Share Purchase Agreement, as a target company, with a capital pool company.  *Id.*  To that end, CGH approached Big Mojo Capital ("Mojo"),[5] a capital pool company, in July of 2012.  *Id.* at ¶177.  CGH proposed selling the entirety of

---

[5]     Mojo later became Defendant CapGains Properties, Inc.  *See* Answer at ¶177, 180–181.

its shares to Mojo in exchange for publicly traded shares of Mojo, which would then be passed directly to CGH shareholders.  *Id.* at ¶178.

To effectuate that arrangement, Mojo entered into a definitive Share Purchase Agreement with CGH on July 31, 2012. *Id.* at ¶179.  CGH's major shareholders, including Plaintiff, were also parties to the Share Purchase Agreement.  *Id.* at ¶180.  As a party to the Share Purchase Agreement, Plaintiff, through Holder, made various representations and warranties to Mojo, including: (1) the subject property was free and clear of all encumbrances, other than those disclosed in the filing statement; (2) all shares of CGH were validly issued and outstanding as fully paid and non-assessable; (3) no shares or other securities of CGH were issued in violation of any laws; (4) CGH was not in default or breach of any agreement; (5) CGH was the owner of, and had good marketable title to, all of its properties; (6) CGH was not in default or in breach of any of its obligations under any of its contracts; (7) Plaintiff had good right and absolute authority to enter into the Share Purchase Agreement; and (8) the Share Purchase Agreement was legal, valid, and binding.  *Id.*  Additionally, Plaintiff agreed to jointly and severally indemnify and save harmless Mojo against all claims arising out of the breach or inaccuracy of any representation or warranty or the failure to comply with any covenant contained in the Share Purchase Agreement.  *Id.* at ¶181; (Doc. 163-2 at 31).

Defendants allege that Plaintiff and Holder are in breach of the Share Purchase Agreement in two respects.  *First*, in Counterclaim One, CGP alleges that Plaintiff and Holder made certain material misrepresentations.  *See* Answer at ¶¶182 –186.  *Second*, in Counterclaim Two, CGP, Knight, and Loprieno allege that Plaintiff and Holder violated

the Share Purchase Agreement's hold harmless and indemnification provision.  *Id.* at ¶¶187–196.

Through its Motion, Plaintiff denies those allegations and seeks dismissal of both counterclaims.   As grounds, Plaintiff contends that the Court lacks subject-matter jurisdiction over each of Defendants' counterclaims, and that Defendants' counterclaims otherwise fail to state a claim for which relief can be granted.  Plaintiff further contends that Counterclaim Two is subject to dismissal for failure to join indispensable parties under Rule 19.  The Court will address each of Plaintiff's contentions in turn below.

### 1.  Lack of Subject Matter Jurisdiction

#### i.   Legal Standard

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994) (citations omitted).  The presumption is that a federal court lacks jurisdiction in a particular case until it has been demonstrated that jurisdiction over the subject matter exists.  *See United States v. Rojas,* 429 F.3d 1317, 1320 (11th Cir. 2005) (citation omitted).  Rule 12 allows for a party to move for dismissal of a claim on the basis that the court lacks subject-matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  This is done through either facial or factual attack. *See McElmurray v. Consolidated Gov't of Augusta–Richmond County,* 501 F.3d 1244, 1251 (11th Cir. 2007).  "A facial attack on the [claim] requires the court merely to look and see if the [party] has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his [claim] are taken as true for the purposes of the motion." *Id.* (internal quotations and citations omitted). "Factual attacks, on  the  other  hand,  challenge  the  existence  of  subject  matter  jurisdiction  in  fact,

irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* (internal quotations and citations omitted). The burden for establishing federal subject-matter jurisdiction always rests with the party bringing the claim. *See McCormick v. Aderholt,* 293 F.3d 1254, 1257 (11th Cir. 2002).

### ii. Application

The Court's subject-matter jurisdiction over *Plaintiff's* claims is uncontested by the Parties and is based on federal question jurisdiction under 28 U.S.C. § 1331. Defendants' counterclaims, on the other hand, are state law claims for breach of contract and, thus, do not give rise to federal question jurisdiction. Consequently, there must be a separate basis on which the Court's subject-matter jurisdiction over Defendants' counterclaims rests in order for Defendants to maintain those counterclaims in this federal action.

In their briefings, the Parties' expend substantial effort disputing whether Defendants' counterclaims are compulsory or permissive. Ordinarily, this distinction is determinative, as compulsory counterclaims generally fall within the supplemental jurisdiction of federal courts under 28 U.S.C. § 1367, while permissive counterclaims require an independent jurisdictional basis—*e.g.*, either federal question jurisdiction under 28 U.S.C. § 1331, which the Court has already ruled out, or diversity jurisdiction under 28 U.S.C. § 1332. *See Bautista v. Discount Warehouse, Inc.*, No. 1:15-cv-24206-KMM, 2016 WL 1028358, at *1 (S.D. Fla. Mar. 15, 2016) (unpublished) (citing *Plant v. Blazer Fin. Servs.*, 598 F.2d 1357, 1359 (5th Cir. 1979)). Plaintiff, for its part, contends that supplemental jurisdiction is improper because Defendants' counterclaims are permissive and have no independent basis for jurisdiction to support them. *See* Motion at 9–11. Defendants counter that their counterclaims are, instead, compulsory and, thus,

automatically qualify for supplemental jurisdiction on that basis alone.  *See* Answer at ¶172; Response at 8–9.

But the Parties miss the mark.  Even assuming Plaintiff is correct (*i.e.*, that Defendants' counterclaims are permissive, as opposed to compulsory, and, thus, do not automatically qualify for supplemental jurisdiction) there *is* an independent basis to support the Court's jurisdiction over Defendants' counterclaims—Diversity jurisdiction under 28 U.S.C. § 1332.

Put simply, diversity jurisdiction requires both the plaintiff(s) and the defendants(s) to be of fully diverse citizenship, and that the amount in controversy exceed $75,000.  *See* 28 U.S.C. § 1332(a).  And indeed, Defendants expressly allege as much in their Answer.  *See* Answer at ¶173 ("[T]he parties in this action are all diverse, and the amount of damages being alleged exceeds $75,000.00.").  Plaintiff, however, denies that allegation, contending that complete diversity was destroyed when it was forced to join Defendant JVS as an indispensable party, which, like Plaintiff, is also a Florida corporation.  *See* Motion at 9.  Plaintiff is mistaken.

"When applied to counterclaims, the [diversity jurisdiction] analysis *is limited to the counterclaim-plaintiff and the counterclaim-defendant*."  *FUJIFILM N. Am. Corp. v. Geleshmall Enterprises LLC*, 239 F. Supp. 3d 640, 646 (E.D.N.Y. 2017) (emphasis added); *see also, e.g., Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835–37 (3d Cir. 2011) (reversing the district court's dismissal of the defendant's breach of contract and breach of fiduciary duty claims for lack of subject-matter jurisdiction because there was diversity of citizenship between the counterclaiming defendant and the plaintiff, "even though some of the co-defendants of the counterclaiming defendant shared the plaintiff's

citizenship"). Thus, here, it makes no difference that Plaintiff and JVS (both Florida citizens) are listed on opposite sides of the 'v' because the Court "is focused on whether jurisdiction exists *with respect to the individual counterclaim*, rather than with respect to the case as a whole." *FUJIFILM*, 239 F. Supp. 3d at 646 (quoting *Barefoot*, 632 F.3d at 836) (emphasis added). In other words, because Defendants have not counterclaimed against JVS, "[its] citizenship is immaterial" to the Court's jurisdictional analysis. *FUJIFILM*, 239 F. Supp. 3d at 646. Indeed, the only relevant consideration is the citizenship of Defendants (the counter-plaintiffs) and Plaintiff and Holder (the counter-defendants). Upon review of the pleadings, it appears that Defendants are citizens of Illinois and Canada,[6] while Plaintiff, as noted above, is a citizen of Florida. As such, there is complete diversity between those Parties. That being the case, only one issue remains: the citizenship of Holder.[7]

Although Holder is a named counter-defendant in each of Defendants' counterclaims, *see* Answer at ¶¶183, 188, Defendants fail to specifically allege his citizenship. Nevertheless, the Court will, for now, accept Defendants' allegation that the Parties, Holder included, "are all diverse." *Id.* at ¶173. Accordingly, Plaintiff's Motion is due to be denied in that respect. However, since Defendants will be granted an

---

[6]    "A corporation is a citizen of its state of incorporation as well as the state in which it has its principal place of business." *Hunt v. Nationstar Mortg., LLC*, 684 F. App'x 938, 941 (11th Cir. 2017). "An individual is a citizen of the state in which he or she is domiciled, which is the state where the individual maintains his or her 'true, fixed, and permanent home.'" *Rozo v. Walmart Inc.*, No. 6:17-cv-1571-GAP-DCI, 2017 WL 4685256, at *2 (M.D. Fla. Oct. 2, 2017), *report and recommendation adopted,* No. 6:17-cv-1571-GAP-DCI, 2017 WL 4657998 (M.D. Fla. Oct. 17, 2017) (quoting *McCormick v. Aderholt*, 293 F.3d 1254, 1257–58 (11th Cir. 2002) (*per curiam*)).

[7]    Although not disputed by Plaintiff in its Motion, there appears to be no question about the amount in controversy, as the Defendants' counterclaims stem from the breach of a Share Purchase Agreement purportedly worth millions of dollars.

opportunity to correct several of the deficiencies identified in their Answer, any amended answer shall specifically allege the citizenship of each counter-defendant so that the Court, as is its obligation, may more accurately evaluate the extent of its subject-matter jurisdiction over Defendants' counterclaims. *See Save the Bay, Inc. v. United States Army*, 639 F.2d 1100, 1102 (5th Cir. 1981) ("[I]t is incumbent upon federal courts trial and appellate to constantly examine the basis of jurisdiction[.]").

### 2. Failure to State a Claim

#### i. Legal Standard

"A motion to dismiss a counterclaim is evaluated the same way as a motion to dismiss a complaint." *Timothy H. Kenney, P.A. v. Sec. Bank, N.A.*, No. 12-80852-CIV, 2013 WL 12095559, at *3 (S.D. Fla. June 3, 2013) (unpublished) (citing *Fabricant v. Sears Roebuck*, 202 F.R.D. 306, 308 (S.D. Fla. 2001)). "Counterclaims, like claims for relief in a complaint, must contain a short and plain statement showing entitlement to relief, and the statement must give the opposing party fair notice of what the claim is and the grounds upon which it rests." *Id.* (citing Fed. R. Civ. P. 8(a)(2) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007)). "The Court must accept as true all factual allegations in the counterclaim and take them in the light most favorable to the counter-claimant." *Id.* (citing *Christopher v. Harbury*, 536 U.S. 403, 406 (2002) and *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004)). "A counterclaim must be dismissed if it does not plead 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the [counter-defendant] is liable for the misconduct alleged." *Id.* (quoting

*Ashcroft*, 556 U.S. at 678) (alterations in original).  "Further, 'the tenet that a court must accept a [counterclaim's] allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.'" *Id.* (quoting *Ashcroft*, 556 U.S. at 678).  "At this stage, the court's consideration is limited 'to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *Id.* (quoting *LaGrasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)).

### ii.  Application

Plaintiff raises multiple grounds for dismissal of Defendants' counterclaims, some of which are equally applicable to both counterclaims, while others are only applicable to either one counterclaim or the other.  The Court will address each in turn below.

*First*, Plaintiff contends that both counterclaims are due to be dismissed as to Holder, since he is not a party to the Share Purchase Agreement—*i.e.*, he merely executed the Share Purchase Agreement on behalf of Plaintiff in his capacity as its President.  *See* Motion at 11–13.  However, upon review of the file, it does not appear that Holder has been served with Defendants' counterclaims, that he has otherwise been properly joined as a party to this action (other than merely being named in the body of Defendants' counterclaims), or, more importantly, that counsel for Plaintiff represents Holder in this action.  Therefore, it is inappropriate for Plaintiff, through its counsel, to make argument on Holder's behalf.  Accordingly, Plaintiff's Motion is due to be denied in that respect.

*Second*, Plaintiff contends that both counterclaims are due to be dismissed because the Share Purchase Agreement is not executed by any party other than Plaintiff.

*Id*. This appears to be an attack on the validity of the Share Purchase Agreement. *See Abbott Labs., Inc. v. Gen. Elec. Capital*, 765 So. 2d 737, 740 (Fla. 5th DCA 2000) ("The elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages.") (citations omitted). However, as noted above, Section 9.8 of the Share Purchase Agreement states that it "may be executed in one or more counterparts, each of which so executed shall constitute an original[.]" (Doc. 163-2 at 34). Moreover, and in any event, the Share Purchase Agreement, say Defendants, was in fact executed by each party to it. *See* Response at 10. Accordingly, as Plaintiff does not otherwise contest the validity of the Share Purchase Agreement, its Motion is due to be denied in that respect.

*Third*, Plaintiff contends that Counterclaim One is due to be dismissed because Defendants' misrepresentation allegations are insufficient to establish a breach. *See* Motion at 11–12. Specifically, Plaintiff takes issue with the following allegations:

> Although the Defendants believe that all the below are actually accurate, to the extent that any of the Plaintiff's arguments may be accepted, [CGP] claims that [Plaintiff] and [Holder] made the following statements which would have been misrepresentations to [CGP], and in breach of the Share Purchase Agreement: (a) [a]ll the shares of [CGH] are validly issued and outstanding as fully paid and non-assessable[;] (b) [n]o shares or other securities of [CGH] have been issued in violation of any laws[;] (c) CGH is not in default or breach of any agreement[;] [CGH] is the owner of, and has good and marketable title to, all of its properties[;] (e) [CGH] is not in default or breach of any of its obligations under any one or more contracts[;] (f) [Plaintiff] has good right and absolute authority to enter into this [Share Purchase Agreement;] (g) [the Share Purchase Agreement] is legal, valid, and binding[;] and (h) [t]here are restrictions on the CapGain Shareholder's ability to resell the Securities and it is the responsibility of the CapGain Shareholder to find out what those restrictions are and to comply with them before selling the securities.

*See* Answer at ¶185. In Plaintiff's view, those allegations cannot support a breach of contract claim because the Defendants, while relying on those representations to

establish a breach, simultaneously admit that they believe those representations to be "accurate." *See* Motion at 11–12. The Court agrees. Defendants cannot condition their allegations on later findings of the Court (or a jury). Either Plaintiff and Holder *did* misrepresent certain facts to be true, or they *did not*. Defendants cannot plead out both sides of their mouths. Therefore, in their current form, the allegations contained in Paragraph 185 of Defendants Answer fail to plausibly allege a breach of the Share Purchase Agreement. Accordingly, Plaintiff's Motion is due to be granted in that respect.

However, Defendants further allege in Counterclaim One that Plaintiff and Holder also "misrepresented to [CGP] that the subject property was free and clear of all encumbrances other than those disclosed in the filing statement." *See* Answer at ¶184. According to CGP, Plaintiff and Holder made that representation notwithstanding their knowledge that Plaintiff had not satisfied a certain debt to a Ms. Alma Jones, which was secured against the property and not disclosed in the filing statement. *Id.* at ¶180(a). Plaintiff does not appear contest the sufficiency of those allegations, as they not addressed anywhere in Plaintiff's Motion, and the Court finds that those allegations are otherwise well-pleaded. Accordingly, Plaintiff's Motion is due to be denied in that respect.

*Fourth*, Plaintiff contends that Counterclaim Two is due to be dismissed as to Defendants Knight and Loprieno because they are not beneficiaries of the hold harmless and indemnification provisions of the Share Purchase Agreement. *See* Motion at 13. Defendants concede as much in their Response:

> The Plaintiff argues that the indemnification clause does not extend to Knight or Loprieno. The Defendants make no such assertion. . . . To the extent that Knight and Loprieno are included in the counterclaim, it is made clear the breach is for failure of [Plaintiff] to indemnify [CGP], and not Knight or Loprieno.

*See* Response at 11.  Accordingly, and without undertaking substantial and unnecessary analysis, Plaintiff's Motion is due to be granted in that respect.  Yet, while Knight and Loprieno concede that they are not beneficiaries of the hold harmless and indemnification provision, they nevertheless contend that they were otherwise damaged "as a direct result of [Plaintiff's] . . . breach" of that provision, *see* Response at 11.  Without being beneficiaries of that provision, however, the Court is unsure—and their allegations do not sufficiently set out—how Knight and Loprieno are entitled to recover damages for a breach of the same.  To the extent that Knight and Loprieno believe they can plead a plausible claim for breach of the hold harmless and indemnification provision, the Court will grant them leave to amend.

*Finally*, Plaintiff contends that Counterclaim Two is due to be dismissed because CGP failed to provide proper notice of its claim as required by the Share Purchase Agreement.  See Motion at 12–13.  In support of that contention, Plaintiff relies on Section 7.1 of the Share Purchase Agreement, which is titled "INDEMNITY" and states in relevant part, "[CGP] shall not be entitled to enforce any claim under this Section unless it shall within two years of the Closing Date have given the CapGain Shareholders or CapGain notice of such claim."  *See* (Doc. 163-2 at 31–32).  However, CGP explicitly alleges that it did, in fact, "provide[] notice to CGH and the CapGain Shareholders of their claim, and more specifically [Plaintiff's] responsibility to save harmless and indemnify [CGP]."  *See* Answer at ¶192.  The Court finds this allegation sufficient to survive Plaintiff's Motion.  Accordingly, Plaintiff's Motion is due to be denied in that respect.

Case No.:  8:16-cv-1039-EAK-AEP

### 3.  *Failure to Join Indispensable Parties*

#### i.  *Legal Standard*

Pursuant to Rule 19,

> [a] person . . . must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:  (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  According to the Advisory Committee, Rule 19(a) "defines the persons whose joinder in the action is desirable," and "recognizes the importance of protecting the person whose joinder is in question against the practical prejudice to him which may arise through a disposition of the action in his absence."  Advisory Comm. Notes to Rule 19.  "If a district court finds that a party must be joined under Rule 19(a), it weighs the factors enumerated in Rule 19(b) and determines in its discretion whether to dismiss the lawsuit."  *Quail Cruises Ship Mgmt. Ltd. v. Agencia De Viagens Cvc Tur Limitada*, No. 09-23248-CIV, 2010 WL 1524313, at *8 (S.D. Fla. Apr. 14, 2010) (unpublished).  "The burden is on the moving parties to establish indispensability."  *Id.* (quoting *Ship Constr. & Funding Servs. (USA), Inc. v. Star Cruises PLC,* 174 F.Supp.2d 1320, 1325 (S.D. Fla. 2001)).

#### ii.  *Application*

Section 7.1 of the Share Purchase agreement requires CGH and the "CapGain Shareholders" to "jointly and severally indemnify and save harmless Mojo" from liability for breach of the Share Purchase Agreement.  *See* (Doc. 163-2 at 31–32).  The "CapGain Shareholders" are identified in Schedule A of the Share Purchase Agreement.  *See id.* at 39.  Included in that list are, *inter alia*, Plaintiff, Knight, in his individual capacity, and

several companies purportedly owned by Knight and Loprieno. *Id.*; *see also* Motion at 13. Plaintiff contends that if CGP intends to sue Plaintiff under the hold harmless and indemnification provision, then it must also sue CGH and *each* of the CapGain Shareholders. *See* Motion at 13–16. Because CGP failed to join these "indispensable parties," Plaintiff argues, Counterclaim Two should be dismissed. *See* Motion at 16. CGP counters that the only CapGain Shareholder to have breached the Share Purchase Agreement is Plaintiff. *See* Response at 13. And because Section 7.1 provides for "joint and several" indemnification, CGP argues that it can sue Plaintiff without joining the other CapGain Shareholders. *See id.* at 12–13.

Under Rule 19, the chief concern of the Court is whether complete relief can be accorded to the parties to the action in the absence of the unjoined party. *See* Fed. R. Civ. P. 19(a). If it cannot, that unjoined party is rendered otherwise indispensable. However, a party is not rendered indispensable for purposes of Rule 19 "simply by virtue of indemnifying one of the named parties." *Lewis v. Clarke*, 137 S. Ct. 1285, 1294 (2017). Rather, if the obligations contemplated by the agreement are "joint and several" as to co-obligors, "*complete relief may be granted in a suit against only one of them*." *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 406 (3d Cir. 1993) (emphasis added); *see also Greenleaf v. Safeway Trails, Inc.,* 140 F.2d 889, 890 (2d Cir. 1944) (indicating that a court has power to grant complete relief in the absence of a co-obligor to a contract), *cert. denied,* 322 U.S. 736 (1944); *Park v. Didden,* 695 F.2d 626, 631 (D.C. Cir. 1982) ("An almost unbroken line of federal decisions holds that persons whose liability is joint and several may be sued separately in federal court.") (citations omitted).

Case No.:  8:16-cv-1039-EAK-AEP

Here, because the Share Purchase Agreement explicitly requires CGH and the CapGain Shareholders to "jointly and *severally* indemnify" CGP, *see* (Doc. 163-2 at 31) (emphasis added), the Court finds that it can accord complete relief to the Parties even in the absence of the other CapGain Shareholders.   Thus, CGH and the remaining CapGain Shareholders are not indispensable parties under Rule 19.   That Plaintiff may have a claim for contribution against CGH and the remaining CapGain Shareholders is irrelevant, "as '[t]he complete relief provision of [Rule] 19(a) does not concern any subsequent relief via contribution . . . for which the absent party might later be responsible." *United States v. Janke*, No. 09-14044-CIV, 2009 WL 2525073, at *2 (S.D. Fla. Aug. 17, 2009) (unpublished) (quoting *DeWitt v. Daley,* 336 B.R. 552, 556 (S.D. Fla. 2006).  Accordingly, Plaintiff's Motion is due to be denied in that respect.

## III.   Conclusion

Accordingly, it is **ORDERED** that Plaintiff's Motion to Strike Affirmative Defenses and Dismiss Counterclaims Filed by Defendants Brian Knight, Michael Loprieno, and CapGain Properties, Inc. (Doc. 179) is **GRANTED IN PART AND DENIED IN PART** as follows:

1.      Plaintiff's Motion is **GRANTED** with respect to Defendants' laches defense ("Affirmative Defense One"), and Affirmative Defense One is **STRICKEN**.

2.      Plaintiff's Motion is **GRANTED** with respect to Defendants' unclean hands defense ("Affirmative Defense Two"), and Affirmative Defense Two is **STRICKEN**. However, Defendants are granted leave to amend.

3.      Plaintiff's Motion is **GRANTED** with respect to Defendants' *res judicata* defense ("Affirmative Defense Four"), and Affirmative Defense Four is **STRICKEN**.

4.      Plaintiff's Motion is **DENIED** with respect to Defendants' release defense ("Affirmative Defense Six").

5.      Plaintiff's Motion is **DENIED** with respect to Defendants' exemption defenses ("Affirmative Defense Eight" and "Affirmative Defense Nine").

6.      Plaintiff's Motion is **DENIED** as to Counterclaim One and Counterclaim Two to the extent that the Court finds it has subject matter jurisdiction over both.  However, any amended complaint shall specifically allege the citizenship of each counter-defendant.

7.      Plaintiff's Motion is **GRANTED** as to Counterclaim One to the extent that the allegations in Paragraph 185 are **DISMISSED WITHOUT PREJUDICE**.  CapGain Properties, Inc. is granted leave to amend the allegations contained in Paragraph 185. Plaintiff's Motion is **DENIED** in all other respects as it pertains to Counterclaim One.

8.      Plaintiff's Motion is **GRANTED** as to Counterclaim Two to the extent that Counterclaim Two is **DISMISSED WITHOUT PREJUDICE** as to Knight and Loprieno, with leave to amend.  Plaintiff's Motion is **DENIED** in all other respects as it pertains to Counterclaim Two.

9.      Defendants shall file an amended answer not inconsistent with the directives of this Order within **fourteen (14) days.**

10.     Any amend answer, to the extent it includes counterclaims against George Holder, shall be duly served on Holder in accordance with the Federal Rules of Civil Procedure and the Local Rules of this District.

Case No.:  8:16-cv-1039-EAK-AEP

11.    To the extent the Parties anticipate engaging in additional motion practice, they are, *again*,[8] reminded that their arguments and positions are to be presented as clearly and concisely as possible.  Judicial resources should not be spent sifting through spelling and grammar errors, fuzzy argument, poor organization, and subpar legal research in order to uncover the merits of the Parties' respective positions.   This is especially true in a case such as this, which involves multiple parties, convoluted factual underpinnings, complex issues of federal securities law, and real estate and securities transactions purportedly valued at millions of dollars.

DONE and ORDERED in Chambers, in Tampa, Florida this 21 day of June, 2018.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties[9]

---

[8] *See* (Doc. 92 at 2).

[9] In their Answer, Knight and Loprieno indicate that they are proceeding *pro se*.  *See* Answer at 1.  Although Loprieno appears to be a licensed attorney, should any *pro se* party have questions or concerns regarding the Court's instructions, they are encouraged to make use of the resources available to *pro se* litigants in this District.  The Tampa Bay Chapter of the Federal Bar Association operates a Legal Information Program on Tuesdays from 1:00 p.m. to 2:30 p.m. at the Sam M. Gibbons United States Courthouse, 801 North Florida Ave, Tampa, FL 33602.  Through that program, *pro se* litigants may consult with a lawyer on a limited basis, free of charge.  More information about the program is available on the Court's website at http://www.flmd.uscourts.gov/legal-information-program.  Additionally, librarians, lawyers, and judges from around the Middle District created a helpful guide to assist *pro se* litigants proceeding in federal court.  That guide can be found by following this link:  http://www.flmd.uscourts.gov/sites/flmd/files/documents/mdfl-guide-for-proceeding-without-a-lawyer.pdf.